IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH L. PINSKEY, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 2:15-cv-0184 |
| v. | ) |
| | ) Judge Mark R. Hornak |
| MICHAELS STORES, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION

**Mark R. Hornak, United States District Judge**

Plaintiff Joseph Pinskey ("Pinskey") contends that Michaels Stores, Inc. ("Michaels") demoted and/or terminated him from his position as the manager of a Michaels store in Monroeville, Pennsylvania, because of his age and disability. Michaels responds that Pinskey voluntarily resigned from his position and/or that any adverse employment action suffered by Pinskey stemmed from his deficiencies as a manager rather than discriminatory animus. Now before the Court is Michaels' motion for summary judgment (ECF No. 47). For the reasons which follow, Michaels' motion will be granted in part and denied in part.

### I. BACKGROUND

Michaels hired Pinskey as a Store Manager in Training on July 14, 2002. ECF No. 49 ¶ 1. The decision to hire Pinskey was made by District Manager Don Newcomb. Id. ¶ 3. At the time of his hire, Pinskey was 46 years old and Newcomb was 43 years old. Id. ¶¶ 2, 4. Pinskey reported directly to Newcomb throughout his entire tenure with Michaels. Id. ¶¶ 5-6.

From 2003 through 2010, Pinskey served as the manager of Pittsburgh area Michaels store locations in Indiana, North Hills, and Cranberry. ECF No. 58 ¶¶ 115-17. His performance reviews for 2003 through 2009 reflect that he was "experienced" and "successful" and that his

performance typically met or exceeded expectations. ECF No. 58 ¶¶ 120-134. Pinskey also served for a period of time as a District Trainer because of his "experience and his ability." ECF No. 58-2 at 77. In addition, Plaintiff was selected in 2007 to be the District's "Five Star Captain" as part of a program to standardize guidelines and work areas throughout the company. ECF No. 58 ¶ 119. Pinskey was selected to be the District's "Five Star Captain" due to his ability, talent and experience. ECF No. 58-2 at 77-78.

In January, 2010, Pinskey became the Store Manager of the Michaels store located in Monroeville, Pennsylvania. ECF No. 49 ¶ 8. In April of 2010, Michaels engaged an outside vendor to conduct an "Associate Engagement Survey." Id. ¶ 15. For the previous year, the rating for the Monroeville store in the survey had been 78% favorable. Id. ¶ 18. In 2010, under Pinskey's management, that score dropped to 33%. Id. Pinskey also scored only 23% for "Manager Effectiveness" in the survey, compared to an overall District score of 74%. Id. ¶ 19.

During the fourth quarter of 2010, Pinskey informed Newcomb that he was suffering from glaucoma. Id. ¶ 10; ECF No. 58 ¶ 10. Pinskey alleges that Newcomb began to treat him differently from that point forward, accusing him of using his glaucoma as an excuse for poor performance and embarrassing him in front of co-workers by suggesting that Pinskey could not "see things properly." ECF No. 58 ¶ 140.

Pinskey's performance review for 2010 indicated that he continued to be an "experienced and successful" store manager, but noted that he was "challenged" with managing the Monroeville store effectively. ECF No. 58 ¶ 12. His overall rating dropped to "Meets Expectations – Low." ECF No. 49 ¶ 12; ECF No. 58 ¶ 138. His evaluation further noted that his store ranked last in the District in "associate engagement" and "management effectiveness" based on the results of the survey. ECF No. 49 ¶ 14.

Another Associate Engagement Survey was conducted in 2011. Id. ¶ 24. In the 2011 survey, the Associate Engagement rating for the Monroeville store dropped again, from 33% to 24%. Id. ¶ 25. Pinskey's rating for Manager Effectiveness dropped from 23% to 12%. Id. ¶ 26. In addition, several of the associates polled for the survey provided written responses attacking Pinskey's effectiveness. Id. ¶¶ 29-34. For example, one employee noted that Pinskey "comes in late and leaves early," takes lengthy lunches, spends much of the day on the telephone, and "has NO clue what goes on in the store." Id. ¶ 30. Another associate noted that the store employees had been "a big happy family" under prior management, but were now stressed out and unhappy because of Pinskey's lack of engagement. Id. ¶ 31. Other associates characterized Pinskey as a "horrible" manager and noted that he spent most of his time away from the store, sitting in his office, or otherwise avoiding work. Id. ¶¶ 32-34. According to one employee, Pinskey had transformed the store from "a good place to work" to "a not so good place to work where nobody is happy with their job because of him." Id. ¶ 33.

In July of 2011, Newcomb met with Pinskey to discuss the results of the 2011 Associate Survey. Id. ¶ 40. Newcomb explained that the results of the survey were very disappointing and that Pinskey's continued employment with Michaels was in jeopardy. Id. ¶¶ 42-44. Pinskey interpreted the meeting as a demand for his resignation and a threat to "make his life miserable" if he declined to resign. ECF No. 58 ¶¶ 42, 44.

Following the meeting, Pinskey was placed on a "Performance Improvement Plan" ("PIP"). ECF No. 49 ¶¶ 44-45; ECF No. 58 ¶ 45. Newcomb presented Pinskey with a written Action Plan containing three objectives on which to focus: (1) Store Standards; (2) Associate Engagement/Leadership Action Plan; and (3) Store of the Future ("SOF") Launch and Execution. Id. ¶ 47. The Action Plan form contained a written caution that failure to improve

3

these performance deficiencies "may result in disciplinary action, up to and including termination." Id. ¶ 71. Pinskey also received a "Final Written Warning" from Newcomb regarding his failure to correct the problems at the Monroeville store over the prior 16 months. Id. ¶¶ 48-49.

At around this same time, Michaels was preparing to rollout a new program called the "Store of the Future" ("SOF"). ECF No. 49 ¶ 56. On August 3, 2011, Newcomb attended a meeting between Pinskey and his management team with respect to the SOF rollout. Id. Newcomb observed that the management team was not prepared for the SOF meeting and that Pinskey had "not accomplished" any of the three objectives detailed in the prior Action Plan. Id. ¶¶ 57, 59.

Newcomb conducted additional store tours on August 9, 15, 19, and 27, 2011. On each occasion, Newcomb noted that Pinskey had not made progress on any of the three objectives described in his Action Plan. Id. ¶¶ 60, 66, 68, 70. Newcomb also observed that the SOF rollout had "launched poorly" at the Monroeville store. Id. ¶¶ 65, 67. Newcomb documented each of these observances on Pinskey's Action Plan forms. Id. ¶¶ 59, 60, 71. Pinskey contends that these criticisms stemmed from Newcomb's desire to make his life miserable because of his glaucoma rather than from legitimate performance deficiencies. ECF No. 58 ¶¶ 59-60, 66-68, 70.

Based on Pinskey's failure to make progress on the objectives in his Action Plan, Newcomb sent an email to Human Resources Manager Jon Sparks and Regional Vice President Ralph Nemeth recommending that Pinskey's employment be terminated. Id. ¶ 69. Sparks disagreed, stating to Newcomb that Pinskey deserved more time to improve his performance. ECF No. 58 ¶ 141.

4

On September 9, 2011, Pinskey requested a medical leave of absence for "depression" and "anxiety." ECF No. 49 ¶ 80; ECF No. 58 ¶ 82; ECF No. 58-1 at 70. Per Michaels' policy, an employee who qualifies for medical leave is entitled to an initial twelve-week leave of absence pursuant to the Family and Medical Leave Act ("FMLA"). ECF No. 58-19 at 26-27. If the employee remains unable to work, he or she can request an additional twelve weeks of non-FMLA medical leave and, if necessary, an additional six weeks of personal leave. Id. The maximum amount of leave time available is thirty weeks. Id.

Michaels approved Pinskey's initial request for FMLA leave. ECF No. 49 ¶ 85. Pinskey's twelve weeks of FMLA leave expired on December 1, 2011, without Pinskey being released by his doctor to return to work. Id. ¶¶ 80, 85. He remained away from work pursuant to his doctor's orders until March 5, 2012, a period of time encompassing approximately 25 weeks. ECF No. 58 ¶ 153. During Pinskey's absence, Ann Marie Gaurich, age 64, transferred to the Monroeville store from the Butler store to serve as Temporary Store Manager. ECF No. 49 ¶ 83. Dennis Imhoff, age 65, transferred to the Butler store to cover for Gaurich. Id. ¶ 84.

On March 2, 2012, Pinskey emailed Newcomb and informed him that he would be available to return to work on March 5, 2012. ECF No. 49 ¶ 95. Newcomb arranged a telephonic conference with Pinskey and Sparks the following day to discuss Pinskey's status. Id. ¶ 97. During that call, Newcomb and Sparks informed Pinskey that Gaurich had replaced him as the store manager of the Monroeville store and that there were no other open store manager positions. Id. ¶¶ 98-99. Newcomb and Sparks offered to place him in another open position, but indicated that he would have to submit a new application and that he would likely be placed in an hourly position, possibly in a part-time capacity. ECF No. 58-2 at 240-43.

Pinskey responded by email on March 5, 2012, stating that he believed that there were three stores in the District being covered by temporary managers and requesting placement in one of those positions. ECF No. 49 ¶100. Sparks informed Pinskey by telephone that those positions were not available and reiterated the offer to try to find him an hourly (possibly part-time) position. Id. ¶ 101. On March 7, 2012, Pinskey sent the following email in response:

> I reviewed your offer: No Store Manager positions open. Just hourly part-time and not guaranteed position. I'm not going to accept your offer. My questions what is my final day (date) . . .

Id. ¶ 102. Newcomb responded that Pinskey's last day of employment would be March 7, 2012. Id. ¶ 103.

## II. STANDARD FOR REVIEW

Summary judgment may be granted where the moving party shows that there is no genuine dispute as to any material fact, and that a judgment as a matter of law is warranted. FED. R. CIV. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the Court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating the evidence, the Court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

The burden is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F,3d 135, 140 (3d Cir. 2004). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. *McGreevy v.*

6

*Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof. *Celotex*, 477 U.S. at 322.

Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial. *Id.* at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

### III. **DISCUSSION**

Pinskey asserts discrimination claims based on his age and disability pursuant to the Americans with Disabilities Act ("ADA"), the Age Discrimination and Employment Act ("ADEA"), and the Pennsylvania Human Relations Act ("PHRA"). Each of these claims is analyzed pursuant to the familiar burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To prevail, Pinskey must first establish a *prima facie* case of discrimination. *Id.* at 802. If he does so, the burden of production shifts to Michaels to articulate a legitimate, non-discriminatory rationale for the allegedly discriminatory action. *Id.* The burden then shifts back to Pinskey to establish by a preponderance of the evidence that Michaels' stated reason is pretextual. *Id.* at 804; *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015).

## A. Disability Discrimination (Counts I and II)

Counts I and II of Pinskey's Complaint allege disability-based discrimination in violation of the ADA, 42 U.S.C. § 12101, *et seq.*, and the PHRA, 43 Pa. Stat. Ann. § 951, *et seq.*[1] The ADA prohibits discrimination against a qualified individual with a disability because of that disability. 42 U.S.C. § 12112(a). Thus, in order to establish his *prima facie* case, Pinskey must demonstrate that: (1) he is a disabled person within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job, with or without reasonable accommodations; and (3) he has suffered an adverse employment decision as a result of discrimination. *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). Michaels challenges only the second and third elements of Pinskey's *prima facie* case. *See* ECF No. 48 at 12.

### 1. Prima Facie Case

Michaels first contends that Pinskey cannot establish that he suffered an adverse employment decision because he resigned his employment voluntarily. The record reflects that Newcomb and Sparks offered to find an open position for Pinskey as an hourly and/or part-time employee when he returned from his medical leave. Pinskey declined that offer and requested placement as a store manager within the district. Newcomb and Sparks denied that request. Pinskey responded that he was "not going to accept [Michaels'] offer" of part-time work and asked "what is my final day (date)." ECF No. 49 ¶ 102. Michaels characterizes Pinskey's rejection of the offer of part-time employment as a voluntary resignation and contends that this decision is fatal to his ADA claim.

---

[1] Because "the PHRA is basically the same as the ADA in relevant respects," the same analysis applies to a PHRA claim as to an ADA claim. *See, e.g., Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002). Therefore, the Court will consider both claims together. *See Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 n. 6 (3d Cir. 2004).

8

In his Brief in Response, Pinskey clarified his position with regard to this element of his *prima facie* case:

> What the Defendant ignores in [arguing that he voluntarily resigned] is that the only offer made to the Plaintiff, based on either set of facts, is a demotion. The law is clear regarding a demotion which meets the exact definition of an adverse employment action. . . . This is not a voluntary resignation by the Plaintiff as the Defendant claims but the required adverse employment action by the Defendant.

ECF No. 57 at 4-5. In other words, Pinskey contends that his demotion – either independently or in conjunction with his subsequent separation from employment – meets the definition of an adverse employment action within the meaning of the ADA.

An adverse employment action is one that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). It is well-settled that "something less than a discharge," such as a demotion or transfer, "[can] be an adverse employment action." *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 411 (3d Cir. 1999) (holding that "transfers and demotions may demonstrate adverse employment actions."); *see also Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (observing that "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" are all examples of adverse employment actions). For example, "[a] demotion from full-time to part-time employment can constitute an adverse employment action under Third Circuit precedent." *Lindsey v. St. Mary Medical Center*, 2016 WL 878307, at *9 (E.D. Pa. Mar. 7, 2016) (citing *Jones*, 198 F.3d at 411-12). Similarly, "[a] reduction of hours . . . would qualify as an adverse employment action as it could deprive that plaintiff of employment opportunities or affect her status as an employee." *Wilson v. Checkers Drive-In Restaurants, Inc.*, 2013 WL 2256133, at *5

(E.D. Pa. May 23, 2013). The same is true of an employment action that reduces an employee's responsibilities, salary, or seniority. *Fiorentini v. William Penn Sch. Dist.*, 150 F.Supp.3d 559, 567 (E.D. Pa. 2016).

The allegations marshalled by Pinskey easily meet this standard. As noted above, Newcomb and Sparks' offer would have reduced Pinskey from a full-time, salaried position as a store manager to an hourly, part-time role as a clerk or cashier. This type of demotion clearly represents a "reassignment with significantly different responsibilities" and/or a "decision causing a significant change in benefits." *Burlington Indus.*, 524 U.S. at 761; *see also Lindsey*, 2016 WL 878307, at *9 (demotion from full-time to part-time is an adverse employment action). Newcomb also admitted that Pinskey would have had to fill out a new application and would have been treated as a new employee, a loss of seniority and status that would also qualify as an adverse employment action. ECF No. 58-2 at 241; *Fiorentini*, 150 F.Supp.3d at 567.

Pinskey's position is bolstered by evidence that Michaels had a practice and policy of holding an employee's job open during a necessary medical absence. *See* ECF No. 58-21 at 23. Sparks acknowledged this policy during his deposition:

> Q: [On page 560 of the Michaels Field Management HR Manual], one of the boxes says hold a job open during a necessary absence, is that right?
>
> A: Yes.
>
> Q: And that's a solution for an accommodation, is that correct?
>
> A: Yes.
>
> Q: And in 2012 was that the policy at Michaels?
>
> A: Yes.

ECF No. 58-3 at 72. Newcomb could not recall any other Michaels employee having been replaced or demoted while on a leave of absence. ECF No. 58-2 at 246. In light of the foregoing, Pinskey's demotion from store manager satisfies the requirements of an adverse employment action.

Michaels next challenges Pinskey's qualifications for the position of store manager. However, Michaels' challenge is based entirely on Pinskey's low performance reviews and failure to meet expectations in effectively managing the Monroeville store. This Court has previously observed that subjective performance concerns of this nature are more appropriately addressed at the pretext stage:

> In this Circuit, although an employee must show that he is "qualified" for the position from which he is terminated in making out a prima facie case, where an employee possesses "the background qualifications for the position for which he was hired," but the employer alleges that the employee's conduct did not "possess subjective qualities" desirable to the employer, the employee's failure to meet those expectations is "more appropriately considered at the second stage of the [*McDonnell Douglas*] analysis." *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 268 (3d Cir.2005) (citing *Weldon v. Kraft, Inc.*, 896 F.2d 793 (3d Cir.1990)).

*Evanoski v. United Parcel Service*, 2013 WL 4666274, at *6 (W.D. Pa. Aug. 30, 2013) (internal quotations and citations omitted).

Michaels does not contend that Pinskey lacked the requisite education or experience for the position of store manager. *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1122 (3d Cir. 1997) ("In reviewing qualifications, we must only look to objective criteria, such as [plaitniff's] education and experience."). To the contrary, the record is replete with evidence that Pinskey was a successful and highly regarded manager for many years prior to his transfer to the Monroeville store. Therefore, Pinskey has established the requisite elements of his *prima facie* case.

11

## 2. Nondiscriminatory Explanation

Once the plaintiff establishes a *prima facie* case, "the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action." *Smith v. City of Allentown*, 589 F.3d 684, 689-90 (3d Cir. 2009). This burden is "relatively light" and can be satisfied by evidence that would permit a conclusion that the employer had a non-discriminatory reason for the action. *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (internal quotation omitted).

Michaels contends that Pinskey was not offered a store manager position upon his return from medical leave because of his decreasing job performance over the previous year and his failure to effectively manage the Monroeville store. Michaels notes that Pinskey's 2010 evaluation dropped his performance to "Meets Expectations – Low" and that his store ranked last in the district that year in "associate engagement" and "management effectiveness." As set forth above, there is record evidence regarding the survey data and other indicia of Plaintiff's declining job performance. This evidence is sufficient to satisfy Michaels' "minimal burden" at this stage. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012) (describing this step as a "minimal burden").

## 3. Pretext

In order to demonstrate that Michaels' stated reason for his demotion was pretextual, Pinskey must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Burton v. Teleflex Inc.*, 707 F.3d 417, 427 (3d Cir. 2013) (quoting *Fuentes*, 32 F.3d at 764-65). Here, Pinskey focuses his arguments on the first *Fuentes* prong. To

meet his burden, he "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 765 (internal quotation omitted). He must do more than show that the defendant's decision was wrong or mistaken; rather, he must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Tomasso*, 445 F.3d at 706.

As an initial matter, the Court observes that Michaels' current explanation for Pinskey's demotion – his failure to perform his job responsibilities in a satisfactory manner – differs from that given to him at the time of that demotion. When Pinskey attempted to return to work in 2012, Newcomb and Sparks never mentioned his job performance; they simply informed him that there were no open management positions anywhere within the district. ECF No. 58-2 at 243; ECF No. 58-3 at 140. The record suggests, however, that three stores within the District were being temporarily managed by acting store managers at that time. ECF No. 50-1 at Tab 23. Rather than explain this discrepancy, Michaels has now shifted its articulated rationale for Pinskey's demotion to his alleged job performance deficiencies. This shift, in and of itself, may be suggestive of pretext. *See, e.g., Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 281 (3d Cir. 1998) (observing that an employer's "variation in articulated reasons" for an employment action throughout the course of litigation may be "sufficient for a reasonable jury to view it as evidence of pretext leading to an inference of discrimination"); *Petrikonis v. Wilkes-Barre Hosp. Co., LLC*, 582 Fed. Appx. 126, 129 n. 5 (3d Cir. 2014) (noting that an employer's shifting rationale is evidence of pretext where "employer's proffered reasons for [the adverse action] at time of [the adverse action] and during litigation are inconsistent") (citing *Siegel v. Alpha Wire Corp.*, 894 F.2d 50, 55 (3d Cir. 1990)).

Beyond that, Pinskey has also offered evidence that Michaels failed to follow its own established policy of holding an employee's position open while the employee is on medical leave. ECF No. 58-21 at 23; ECF No. 58-3 at 72. Such procedural irregularities can be evidence of discriminatory intent, particularly when coupled with evidence that other employees were treated differently with respect to those same policies. *See, e.g., Stewart v. Rutgers*, 120 F.3d 426, 434 (3d Cir. 1997) (observing that procedural departures "might afford evidence that improper purposes are playing a role") (quoting *Village of Arlington Heights v. Metropoloitan Housing Development Corp.*, 429 U.S. 252, 267 (1977)); *Colgan v. Fisher Scientific Co.*, 935 F.2d 1407, 1422-23 (3d Cir. 1991). Newcomb acknowledged that he could not recall any other employee who had ever been replaced while out on leave. ECF No. 58-2 at 246.

Finally, there is conflicting evidence with respect to the alleged inadequacies in Pinskey's job performance. Prior to 2010, Pinskey's performance as a store manager routinely met his employer's expectations. Pinskey's annual evaluations from 2003 through 2009 paint a portrait of a successful, experienced, and talented manager. Indeed, Pinskey's managerial talent resulted in him being selected as a District Trainer and as a Five Star Captain for the District. It was not until Pinskey revealed that he was suffering from glaucoma that Newcomb began to challenge his performance. While it is possible that Pinskey's performance abruptly deteriorated, a factfinder could also plausibly infer that the aberrational criticism directed towards Pinskey following his glaucoma diagnosis stemmed from discriminatory animus. *See, e.g., Colgan*, 935 F.2d at 1422-23 (noting that an aberrational performance rating that was "substantially less favorable" than previous evaluations, given immediately after an employee refused early retirement, was suggestive of age discrimination); *Exter v. Wilkes-Barre Hosp. Co., LLC.*, 2014 WL 4384363, at *7-11 (M.D. Pa. Sep. 3, 2014) (concluding that a negative performance reviews

issued immediately after the plaintiff revealed that she was disabled, and which contradicted uniformly positive prior reviews, permitted an inference that the employer's reliance on that negative review was pretextual). Michaels' reliance on the results of the annual Associate Surveys, stark as those results may appear, is also subject to being called into question in light of Sparks' testimony that no other store manager had ever been demoted or terminated based on the results of that survey. *See* ECF No. 58-3 at 42.

Considering the record before the Court, it concludes that there is sufficient plausible evidence in the record from which a reasonable jury could infer that Michaels' proffered reason for Pinskey's demotion was a pretext for unlawful discrimination. Summary judgment as to Counts I and II will be denied.

### B. Age Discrimination (Counts III and IV)

Based on the same set of facts, Pinskey also contends that he suffered age discrimination in violation of the ADEA, 29 U.S.C. § 621, *et seq.*, and the PHRA.[2] To establish a prima facie case of age discrimination under the ADEA, Pinskey must show that: (1) he is forty years of age or older; (2) Michaels took an adverse employment action against him; (3) he was qualified for the position in question; and (4) he was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).

Although Michaels challenges each of the final three elements of Pinskey's ADEA claim, the Court has already concluded that Pinskey was qualified for his position and that he suffered an adverse employment action. We reach a different result, however, with respect to the fourth element. At the time of the adverse employment action, Pinskey was 56 years old. ECF No. 49

---

[2] Claims of age discrimination under the ADEA and PHRA are analyzed in an identical fashion. *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998).

15

¶7. He was replaced by Gaurich, age 64. Id. ¶ 83. Gaurich was replaced by Dennis Imhoff, who was 65 years old at that time. Id. ¶ 84. Because Pinskey was replaced by significantly older individuals, a reasonable jury could not find any inference of unlawful age discrimination on this basis. *See, e.g., Williams v. Wells Fargo Bank*, -- Fed. Appx. --, 2016 WL 4207395, at *2 (3d Cir. 2016) (ADEA claim fails as a matter of law where the plaintiff, 54, was replaced by an individual who was also 54 years old); *Pederzolli v. Sonneborn, Inc.*, 2014 WL 6953119, at *7 (W.D. Pa. Dec. 8, 2014) (58 year-old plaintiff being replaced by a 54 year-old individual was not suggestive of age discrimination).

Pinskey's reference to available positions at several other Michaels stores in the district is similarly unavailing. The acting manager of the Butler store, Roberta Carpenter, was 63. Id. ¶ 107. The acting managers of the other stores cited by Pinskey were 63, 56, 46 and 33. Id. ¶¶ 107-112. Pinskey's age, 56, places him slightly on the younger end of this spectrum, with four of those individuals his age or older, and only two younger. The Court observes that the record is utterly devoid of any other evidence that might suggest age-based discrimination. Pinskey bears the burden of producing evidence that his age not only "played a role" in Michaels' decision-making process, but "had a determinative influence on the outcome." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009) (noting that the ADEA requires a plaintiff to "prove by a preponderance of the evidence that age was the 'but-for' cause of the challenged employment decision"). Even considering the record in a light most favorable to Pinskey, Pinskey has not produced, nor has the Court's independent review of the record revealed, that there is sufficient record evidence to meet this higher and more exacting standard for age discrimination claims. Consequently, summary judgment is appropriate as to Pinskey's age discrimination claim.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted in part and denied in part. Summary judgment will be entered in favor of Michaels with respect to Counts III and IV of the Complaint. Summary judgment will be denied with respect to Counts I and II. An appropriate order will issue.

*[signature]*
Mark R. Hornak
United States District Judge

Dated: December 7, 2016

cc: All Counsel of Record